[No. 25235. Department Two. January 25, 1935.]

MILLIE MADISON DINES, *Appellant*, v. IVAN L. HYLAND
*et al., Respondents.*[1]

*Tucker & Tucker* and *Wright & Wright* (*Felix Rea,*
of counsel) for appellant.

*Hyland, Elvidge & Alvord,* for respondents Hyland
*et al.*

*Padden & Moriarty* and *Earl F. Requa,* for re-
spondents Pederson *et al.*

BLAKE, J.—For more than forty years prior to his
death in September, 1933, Hans Pederson was a resi-
dent of Seattle. About 1900, he was married to Marie
Madsen. In 1911, the Pedersons took into their home
the four children of Mrs. Pederson's brother. Among
them was the plaintiff in this action, Millie Madison
Dines. At that time, the plaintiff was about thirteen

[1]Reported in 40 P. (2d) 140.

years of age. She continued to reside with the Pedersons until her marriage some ten years later. Although she was not adopted by the Pedersons, she was in all respects and at all times treated as a daughter.

Mr. Pederson was a man of large affairs. His principal business was that of a building contractor. It appears, too, that he was an extensive trader in real estate, acquiring lots in Seattle and erecting buildings on his own account. Not many years after plaintiff became a member of his household, he began to take title to various pieces of real estate in her name. In October, 1917, he caused to be conveyed to plaintiff a three hundred twenty acre farm in Snohomish county. At the same time, he acquired title in his own name to the stock and farm equipment on the place.

There is no question but the entire consideration for the farm and personal property was paid by Mr. Pederson. He at all times exercised that dominion and control over the property compatible only with absolute ownership. To facilitate his management of the property, he took a general power of attorney from plaintiff. At one period, he operated the farm in partnership with one Jensen. At another time, he leased it under the plaintiff's name as lessor. As late as January 2, 1932, he entered into a lease in his own name as lessor. He appropriated the profits and rents to his own use without at any time or in any manner holding himself accountable to the plaintiff. Nor did she at any time demand an accounting from him. He paid the taxes.

At the time title was taken in the name of plaintiff, there was an outstanding mortgage on the farm in the amount of thirty-seven thousand dollars. By 1927, Pederson had reduced this indebtedness to ten thousand dollars. In May of that year, he traded one

hundred forty acres of the farm for other property. As a part of the deal, the balance of the mortgage indebtedness was transferred to the one hundred forty acres, thus leaving the one hundred eighty acres standing in the name of plaintiff, free from incumbrance.

Marie Pederson died early in 1932. Hans Pederson, as executor under her will, inventoried the one hundred eighty acres as a part of her estate. Subsequently, Pederson resigned as executor, and defendants Hyland and Haley were appointed administrators with the will annexed. Since then, they have been in possession of the property, and have been managing it as a part of the estate—collecting rents without accounting in any manner to plaintiff.

Prior to Mrs. Pederson's death, Hans Pederson suffered a stroke, by which he was partially disabled. In June, 1932, he married Doris Ann Pederson, who had been his nurse. She was about twenty-four years old; Pederson was sixty-nine. Three or four months prior to Pederson's death in September, 1933, the child Paula Pederson was born.

Shortly after Pederson's death, plaintiff brought this action to quiet title to the one hundred eighty acre farm in Snohomish county, title to which still stood in her name. She brought in as parties defendant Hyland and Haley, as administrators with the will annexed of the estate of Marie Pederson, Doris Ann Pederson, personally and as executrix of the estate of Hans Pederson, Paula Pederson, their daughter, and Chris L. Jensen.

Jensen, lessee of the farm, did not appear in the action. Doris Ann Pederson filed an answer on behalf of herself, personally, and as executrix of the estate of Hans Pederson, and as guardian of Paula Pederson. Hyland and Haley filed an answer as administrators with the will annexed of the estate of

Marie Pederson. In both the answers, cross-complaints were set up seeking to establish a resulting trust in the property for the estates of Marie and Hans Pederson.

After taking evidence, the trial court entered a decree dismissing plaintiff's action and quieting title to the farm in Hyland and Haley, as administrators with the will annexed of the estate of Marie Pederson. Plaintiff appeals. Doris Ann Pederson, as well as Hyland and Haley, is here supporting the decree.

 As we view the case, the question presented is solely one of fact. Before proceeding, however, it may be well to advert briefly to two or three rules of law under which the facts are to be considered. First, where one standing *in loco parentis* pays the purchase price of property, and causes it to be conveyed to one to whom he sustains such relation, no presumption of a resulting trust arises. On the contrary, the presumption is that the conveyance was intended to be a gift, or settlement. 1 Perry on Trusts (7th ed.), § 143; 3 Pomeroy's Equity Jurisprudence (4th ed.), § 1039; *Adley v. Fletcher,* 55 Wash. 82, 104 Pac. 167. The presumption, however, is rebuttable. 1 Perry on Trusts (7th ed.), § 145. (We shall assume, in discussing the facts, that Hans Pederson stood *in loco parentis* to appellant.)

Second, the character of the transaction is to be determined as of the time of conveyance. In other words, the status of the property is fixed either as a gift or a trust at the time the grantee takes title. *Croup v. DeMoss,* 78 Wash. 128, 138 Pac. 671. Of course, a gift *could* be subsequently made. But we do not understand such claim to be made here. In any event, there is no evidence which would support the theory of a gift subsequent to the conveyance.

Third, while a resulting trust in land may be proven by parol, it may be established only by evidence clear,

cogent and convincing. *Herriford v. Herriford,* 78 Wash. 429, 139 Pac. 212. And the burden is on him who asserts it. *Brucker v. De Hart,* 106 Wash. 386, 180 Pac. 397.

■ Appellant contends that, in the face of these rules, respondents have failed to sustain the burden of proof. It would seem the facts heretofore narrated were amply sufficient to establish a resulting trust under the rules stated. Appellant, however, points out certain other facts which she contends show that Hans Pederson intended to give her the farm. These facts are as follows: That a piece of property traded in on the farm had stood in appellant's name; that Pederson kept all papers and accounts connected with the farm in a large envelope, labeled: "Millie Madison, Snohomish Farm;" that he repeatedly referred to the property as "Millie's farm;" that he carried insurance on the buildings in her name; that, at one time, he leased the property in her name as lessor; that, in her name as lessor, he at one time gave notice to the tenant to pay rent or quit the premises; that, after his marriage to Doris Ann, when appellant asked him how his marriage would affect her and the property that stood in her name, Pederson replied in substance: "Why, Millie, anything that is in your name is yours;" that Pederson, as guardian, administered a small estate belonging to the Madsen children, for which he never accounted.

These facts, of course, carry some probative value in support of appellant's position. But, even so, there are some obvious weaknesses in it. Never, until then, had there been any question about Pederson being the owner of any property taken in appellant's name. All of it was, with her acquiescence, handled and disposed of by Pederson as his own. During all the years, she had never demanded an accounting of her uncle for the

rents and profits from the farm, or any other property taken in her name. Even in the interview with her uncle after his marriage to Doris Ann, she did not assert any right to the farm. Even then, she stood by and allowed the administrators of her aunt's estate to continue in control and possession of the farm. At no time did she question the dominion and control exercised over the property by her uncle. Not until after her uncle's death, and the solvency of his estate was in doubt, did she assert that the farm was a gift from him to her.

We are satisfied, from our reading of the record, that, but for her uncle's marriage to Doris Ann, it would never have occurred to appellant to claim the conveyance to be a gift. Her acquiescence in the trade of the one hundred forty acres in 1927 is utterly incompatible with her claim of ownership, for her uncle took title to the property received in trade, and appellant has never questioned his right or title to it.

With respect to the estate of the Madsen children, for which Pederson failed to render an accounting, appellant does not claim that Pederson had the farm conveyed to her to compensate for his failure to make an accounting. And there is not a scintilla of evidence that Pederson used any part of such estate to purchase the farm, or to purchase the piece of property, traded in on the deal, which had stood in appellant's name.

The respondents, to our minds, have sustained the burden of proof, and have established a resulting trust by evidence clear, cogent and convincing.

Judgment affirmed.

BEALS, STEINERT, and MITCHELL, JJ., concur.