[No. 31500. Department One. June 14, 1951.]

NELS E. WALBERG, *Appellant,* v. LOIS MATTSON, *Respondent.*[1]

[1]Reported in 232 P. (2d) 827.

*Russell H. Fluent,* for appellant.

*Elmer J. Sjostrom,* for respondent.

DONWORTH, J.—Plaintiff, Nels Walberg, brought this action asking that he be adjudged owner of certain real and personal property, consisting of a house and lot at 3105 Tulalip avenue, in Everett, and part of the furniture and equipment therein. The theory upon which the action was based was that defendant, Lois Mattson, held the property under a resulting trust for plaintiff's benefit. The action was tried to the court sitting without a jury. At the close of the trial, the court rendered an oral opinion (which was incorporated, by reference, in the findings of fact) holding that defendant was the owner of the real property involved, and that plaintiff was owner of certain items of personal property. Judgment was entered accordingly. Plaintiff's alternative motions for judgment notwithstanding the oral decision or for a new trial were denied. Plaintiff appealed from the portion of the trial court's decree adjudging defendant to be the owner of the real property.

Briefly stated, the pertinent facts are these: Appellant, an elderly man, met respondent in 1943, while both were employed in an Everett shipyard. They were mutually attracted to each other and shortly thereafter commenced to

live together in illicit cohabitation. Appellant was (and still is) married, but, at the time of the trial of this case, had been separated from his wife for about twenty years, his wife having obtained a decree of separate maintenance in 1936. In 1943, appellant filed a suit for divorce, but after a trial it was denied. Several years before the acquisition of any of the property involved herein, appellant inherited about $2,500 and made settlement with his estranged wife whereby he paid her about $1,500. Appellant testified that he retained $1,285 from this inheritance.

Respondent is a divorced woman and the mother of three children. Appellant testified that respondent was living in a small house located on an alley behind the court house when he moved in with her at her request. Respondent denied that their meretricious relationship had its inception in this house. As to respondent's knowledge that appellant was not divorced at that time, appellant testified on direct examination:

"Q. Did she know your status as a married man? A. Yes, she was at the trial when I tried to get a divorce, and she told me after the court was over, 'Oh, let's live together anyway. Eventually you'll get a divorce.'"

On cross-examination, he further testified:

"Q. What did you consider the relationship between you and Mrs. Mattson? Did you consider yourselves as living together as husband and wife? A. I thought we would get married if I got a divorce. She made me believe that, herself, all the time,—wanted a home. I didn't want to shack around."

Shortly after the parties began living together, appellant, using the money which he had inherited, purchased a house and lot at 3109 Tulalip avenue, which property was thereafter used by the parties as a home. Subsequently, appellant purchased three rather dilapidated houses, and he and respondent purchased three vacant lots onto which appellant moved two of the houses. The third house was placed on a lot bought at a tax sale.

He purchased materials and expended much labor in repairing and renovating the houses in order to make them

saleable at a profit. The lot purchased at the tax sale, onto which a house was moved, is located at 3105 Tulalip avenue, and it is this property which is the subject of controversy. The other properties have been sold, including the house and lot at 3109 Tulalip avenue. The parties, upon sale of that property, moved into 3105 Tulalip avenue, and both made it their home until respondent asserted ownership of it and evicted appellant.

The trial court found that the sole consideration for the purchase of all the property was furnished by appellant, and that legal title was taken in the name of respondent in order to avoid legal complications arising from the fact that appellant was still married.

The findings of the trial court on the principal issues are as follows:

"III

"The court finds by clear, cogent and convincing evidence and beyond all legal controversy and beyond a reasonable doubt, that the funds for the purchase of the properties at 3105, 3109, 3133 and 3135 Tulalip Avenue in the City of Everett, County of Snohomish, State of Washington, came from the plaintiff, Nels E. Walberg, and that if any funds at all came from the defendant, Lois Mattson it was in a very minor amount.

"IV

"The court finds that the reason title was taken in Mrs. Mattson's name was so that there would be no complications as far as Mr. Walberg's wife was concerned; that Mr. Walberg is a married man, estranged from his wife, Hannah, for a long period of years, but that the parties hereto were living together in meretricious relationship and that the purpose of purchasing the house at 3109 Tulalip Avenue was as a home for the plaintiff, defendant and her family.

"V

"The court finds that the money was advanced by Mr. Walberg for the purchase of the property at 3109 Tulalip Avenue and he spent the money and did the work to make it a habitable house; that Mr. Walberg advanced the money for the purchase of the lot next door which is now 3105 Tulalip Avenue; that when Mr. Walberg left his employment at the shipyard, he and Mrs. Mattson talked it over and decided they would sell the house and lot at 3109 Tulalip Avenue; that he purchased three houses at Pacific and Hoyt

and had them moved upon the lots at 3105, 3133 and 3135 Tulalip Avenue, and this was done with money earned by Mr. Walberg, or from money borrowed upon the security of these properties.

"VI

"That plaintiff constructed a cement basement and foundation on said lot at 3105 Tulalip Avenue and had one of said houses placed on said foundation; that plaintiff is a carpenter and tradesman and he remodeled and reconstructed said house and he did the carpentry work, the wiring, painting, most of the plumbing and other work and paid for all labor and materials himself on this and the other three houses."

The trial court in its oral decision stated that our decision in *Creasman v. Boyle,* 31 Wn. (2d) 345, 196 P. (2d) 835, compelled a holding in favor of respondent, although the court would otherwise have rendered a decision in appellant's favor.

The general rule is that where property is taken in the name of a grantee other than the person advancing the consideration, in the absence of other evidence of intent, the grantee is presumed to hold the legal title subject to the equitable ownership of the person advancing the consideration. See *Borrow v. Borrow,* 34 Wash. 684, 76 Pac. 305; *Holly Street Land Co. v. Beyer,* 48 Wash. 422, 93 Pac. 1065; *Scott v. Currie,* 7 Wn. (2d) 301, 109 P. (2d) 526; *Creasman v. Boyle,* 31 Wn. (2d) 345, 196 P. (2d) 835; Restatement, Trusts, 1343, § 440.

This court has recognized two exceptions to this rule based on the relationship of the parties. The first was stated in *In re Cunningham's Estate,* 19 Wn. (2d) 589, 143 P. (2d) 852, wherein it was said that gift, rather than resulting trust, will be presumed when the person taking legal title is a natural object of the purchaser's bounty. See, also, *Adley v. Pletcher,* 55 Wash. 82, 104 Pac. 167; *Dines v. Hyland,* 180 Wash. 455, 40 P. (2d) 140. The second exception was considered and applied in the recent case of *Creasman v. Boyle, supra,* in which a man furnished the consideration for the purchase of property which was put in the name of a woman with whom he lived in illicit cohabitation. No evidence of actual intent of the parties was introduced since the woman

was dead and Rem. Rev. Stat., § 1211 [P.P.C. § 38-3], prohibited the man from giving such testimony. We said in that case,

"We think that, under these circumstances and in the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it."

The primary question on this appeal is whether either of these exceptions controls in the instant case so that the general rule does not apply.

As to the first exception, the mere existence of the particular relationship gives rise to a presumption that gift rather than trust was intended, but this presumption may be rebutted by evidence which is clear, cogent, and convincing that no gift was intended. *Denny v. Schwabacher,* 54 Wash. 689, 104 Pac. 137; *In re Hammer's Estate,* 145 Wash. 322, 260 Pac. 532. See *Adley v. Pletcher, supra; Dines v. Hyland, supra;* and *Scott v. Currie, supra.*

The second exception applies in cases where the existence of the meretricious relationship, coupled with an absence of evidence of an inconsistent intent, gives rise to a presumption that the property was disposed of according to the intent of the purchaser. The presumption does not arise at all unless there is an absence of evidence of a contrary intent. *Creasman v. Boyle, supra.*

What evidence of intent was introduced in the instant case? It appears in the record, and was found by the trial court, that the reason appellant had the title taken in respondent's name was to avoid difficulties in later transferring or encumbering the property, the parties being mindful of appellant's unsettled marital status. The existence of such a purpose is clearly inconsistent with an intent that respondent take both legal and beneficial ownership.

It further appears from the record that all of the other property, acquired in the same manner as the house and lot at 3105 Tulalip avenue, was conveyed without protest or claim of ownership by respondent, and that she produced and executed the documents necessary for transfer without

objection. This circumstance strongly suggests that she herself believed that she held only the bare legal title.

What is the effect of the evidence in this case on the previously discussed exceptions to the general rule that a resulting trust arises under the facts of this case? The first exception has no application, because respondent does not claim that appellant made a gift of this property to her. As to the second exception, the findings of fact entered by the trial court in the instant case clearly show that the rule adopted by the majority of the court in the *Creasman* case, *supra,* is inapplicable. The evidence in the present case establishes an intent contrary to that presumed in the *Creasman* case, where the majority opinion stated:

"On the other hand, where, as in the case at bar, the parties have been considerably more than 'domestic strangers' to each other, have by their joint efforts accumulated property while holding themselves out to the world as being husband and wife, and, with full knowledge of the meretricious relationship under which that property has been acquired, have deliberately made disposition thereof as between themselves, there is in our opinion no ground or reason for invoking any equitable theory of resulting trust simply for the purpose of giving the property to the one rather than to the other. Under the facts of this case, there is, in our opinion, no room or reason for an equitable presumption of an intention on the part of the appellant to make himself the beneficial owner of the property and to constitute Caroline A. Paul a trustee merely holding the legal title. On the contrary, we think that, under these circumstances and in the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it."

The vital evidence (which was lacking in the *Creasman* case), the absence of which compelled the holding that the parties in that case intended to dispose of the property exactly as they did dispose of it, is present in this case, and we, therefore, arrive at a decision which is the opposite of that in the *Creasman* case.

In the case at bar, both parties were available as witnesses and testified fully as to the manner in which this property

was acquired. Respondent did not claim that it was accumulated by the joint efforts of the parties. On the contrary, she testified that it was purchased with her own funds, and the trial court in making its findings of fact necessarily found that her testimony was not worthy of belief.

It should further be noted that in the *Creasman* case, the parties had held themselves out to the world as being husband and wife. In this case, while a meretricious relationship existed, respondent never at any time pretended to be Mrs. Walberg, and none of the real property involved was placed in any name other than that of Lois Mattson (respondent).

Appellant's purpose in placing the legal title to this property in respondent's name was proven to the satisfaction of the trial court (finding IV quoted above).

The presumption recognized in the *Creasman* case, *supra,* *i.e.,* that the property was disposed of in accordance with appellant's intent at the time it was purchased, is precluded from arising here because there was credible evidence that appellant's reason for placing the title in respondent's name was to avoid legal complications in selling or encumbering it.

Respondent further contends that, even if a resulting trust would otherwise arise, it must fail here because the purpose of the transaction, assertedly giving rise to a trust, was illegal, and enforcement of a trust here would be against public policy.

This assertion is made for the first time on appeal. It is urged that the trust is illegal for two reasons: first, because appellant was seeking to deceive his wife as to his business dealings; second, because appellant and respondent were living in illicit cohabitation.

Respondent cites no decision of this, or any other court, to support her first contention and makes no claim that appellant's wife has any community or other interest in the property. Since that issue was not submitted to the trial court, we do not deem it necessary to pass upon the question, except to point out that there is evidence here

indicating that the property was the separate property of appellant. Respondent does not make any showing that appellant's estranged wife has been deceived by the title being carried in respondent's name.

■ Respondent's contention that the trust must fail because it was established for an illegal purpose, to-wit, to enable the parties to continue to live in illicit cohabitation, is also unsupported by authority. No case has been cited by respondent holding that a resulting trust between persons living in illicit cohabitation *ipso facto* fails for illegality.

It is not asserted, nor does the record show, that the conveyance was for the purpose of inducing or prolonging illicit cohabitation. All that is shown is that appellant purchased the property, title was taken in respondent's name, the parties were illicitly cohabiting, and that they used the property as a home for themselves and two of respondent's children. It is sufficient to say that these facts do not establish any illegality militating against the enforcement of this trust.

It is our opinion that respondent holds the legal title to the real property involved in this case for the benefit of appellant, and that the trial court erred in holding that the facts (as found by it) brought the case within the rule of *Creasman v. Boyle, supra.*

For the above reasons, the portion of the judgment of the trial court appealed from is reversed, with directions to enter judgment decreeing Nels Walberg to be the legal and beneficial owner of the real property at 3105 Tulalip avenue in Everett and granting such relief as it deems appropriate to quiet appellant's title thereto as against any claim of respondent.

BEALS, HILL, and GRADY, JJ., concur.

SCHWELLENBACH, C. J. (dissenting)—Resulting trusts have been defined in 1 Pomeroy's Equity Jurisprudence (5th ed.) 210, § 155, as follows:

"*Resulting trusts* arise where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but the intent in theory of equity appears

or is inferred or assumed from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go with the legal title. In such a case a trust 'results' in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner."

In regard to the particular type of resulting trust now before the court, a purchase money trust, the author continues:

·"In pursuance of the ancient equitable principle that the beneficial estate follows consideration and attaches to the party from whom the consideration comes, the doctrine is settled in England and in a great majority of the American states, that where property is purchased and the conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him." 4 Pomeroy's Equity Jurisprudence (5th ed.) 71, § 1037.

At page 75, the author continues:

"This description assumes that the conveyance to A is made with the knowledge and consent, express or implied, of B, who pays the price,—that the whole transaction is in pursuance of a common understanding or arrangement."

Now, what was the situation here? *Do the accompanying facts and circumstances* bolster the assumed intent on the part of the appellant to retain the beneficial ownership? From the evidence, can we determine the nature of this transaction in pursuance of a common understanding or arrangement? The property was purchased in respondent's name. The parties were living together. He thought that they would get married if he got a divorce. He, to quote his own language, "didn't want to shack around." The trial court found that the purpose of purchasing the house at 3109 Tulalip avenue was as a home for the appellant, respondent, and her family; that *they* (appellant and respondent) decided that *they* would sell the house and lot where they were then living, and that thereafter a house was moved onto the property now in question. In addition ·to this, appellant testied that he turned his pay checks over to the respondent,

and the expenses of the parties, for purposes both common and private, were defrayed from that source.

No citation of authority is needed for the familiar rule that a trust which may be established by parol testimony may also be rebutted by parol testimony. Appellant himself testified that he purchased the property for the use of both of the parties. The presumed intention on the part of appellant to make himself the beneficial owner of the property and to constitute respondent a trustee, merely to hold the legal title for his benefit, is overcome in the light of his action of vesting in the respondent every use which he himself now claims. It might well be that one of the motivating factors which inclined appellant to purchase this property in respondent's name was to escape complications because of appellant's marital status, and to avoid difficulty in the event that the property was to be reconveyed. But faced with this problem alone, or electing to follow his disinclination to "shack around," I do not believe that appellant would have allowed the property to be taken in respondent's name. I believe that the purpose alleged by appellant is overshadowed and rendered secondary by a more real purpose of the parties as evidenced by the use the parties made of the property.

The decision in *Creasman v. Boyle*, 31 Wn. (2d) 345, 196 P. (2d) 835, is absolutely controlling, and the trial court was correct in leaving the parties where they placed themselves. Appellant has no standing in a court of conscience.