[No. 32789.   Department Two.   June 28, 1954.]

JOHN GRICHUHIN et al., Appellants, v. LUCILLE GRICHUHIN, Respondent.[1]

H. E. Foster, for appellants.

Oscar A. Zabel, for respondent.

DONWORTH, J.—Plaintiffs John Grichuhin and Mary Grichuhin, husband and wife, appeal from a judgment (entered after sustaining a challenge to the sufficiency of their evidence) dismissing an action to establish a resulting trust in their favor as to a certain parcel of residential property situated in the city of Seattle.

In June, 1945, the defendant and Victor Grichuhin, plaintiffs' son, who was then defendant's husband, were purchasing the property involved in this case by real-estate contract.   Later, they were divorced, and the property was awarded to defendant.

Plaintiffs' complaint (filed February 19, 1953) alleged that in April, 1943, Victor Grichuhin had contracted to pur-

[1]Reported in 272 P. (2d) 141.

chase this property, and that, "in the purchase of the said property, . . . the plaintiffs contributed the sum of Five Hundred ($500.00) Dollars," and that no part of that sum had ever been repaid. It was further alleged that defendant was the owner and in possession of the premises, and that plaintiffs were claiming a resulting trust in the property and declaring the trust ended. By their prayer, plaintiffs sought a declaration of the trust and asked that the property be ordered sold, and that from the proceeds of the sale plaintiffs be paid five hundred dollars plus interest.

Defendant's answer was a general denial of the allegations of the complaint.

The case was tried to the court without a jury. Defendant, called as an adverse witness, testified that neither of plaintiffs ever had given her any money to be applied on the purchase price of the property.

Plaintiff John Grichuhin testified that he gave defendant $150 in 1943, $175 in 1945, and $175 in 1946, to be paid on the purchase price of the house. He said he gave the money each time to his then daughter-in-law (defendant), and that each time his son, Victor, and his wife (plaintiff Mary Grichuhin) were present. On each occasion, the father testified, defendant and her husband were in arrears in payments on the property and would have lost the house if the payments had not been made with plaintiffs' money. At the time each payment was made, the father testified, his son, Victor, promised to repay the money as soon as he could, but nothing had ever been repaid.

Victor Grichuhin, called by plaintiffs, testified that he and defendant first bought a house in the Green Lake district in Seattle, and that his father, plaintiff John Grichuhin, gave defendant $150 to pay on the purchase price of that house. He further testified that the Green Lake district house was sold, he and defendant receiving $1,000 for their equity. The $1,000 (of which $150 was his father's, according to Victor) was paid as the down payment on the property involved in this action.

He also testified that he was not present in 1943 when his father gave defendant $150 to pay on the Green Lake district

house (thus contradicting his father's testimony that his son, Victor, was present when all three payments were made). Victor testified that he was present in October, 1946, and in November, 1948, when his father made defendant two payments of $175 in cash to be paid on the purchase price of the property. No receipts were given for the money, he said. Victor also testified that each time his father paid money to defendant to be paid on the house, he (Victor) promised to pay the money back to his father when he obtained work, but that he had never repaid his father any part of the money.

Plaintiff Mary Grichuhin testified that she was present only once when money was paid to defendant to apply on the purchase price of the house, thus contradicting her husband, who said she was present all three times that money was paid to defendant. Mary Grichuhin also testified that she, not her husband, paid defendant the $175 on that one occasion, thus contradicting both her husband and her son, both of whom testified that the father paid defendant the money. Victor promised to repay the money but never had done so, according to her testimony.

At the conclusion of plaintiffs' case, defendant moved to dismiss the action for insufficiency of the evidence to establish a resulting trust.

The trial court gave this oral opinion:

"Well, for the purposes of this motion, I suppose I have to view the plaintiff's evidence in the light most favorable to the plaintiff. Therefore I have to assume, for the purposes of this motion, that it has been proved that the money was paid, although of course if I were called upon to determine it as a question of fact I would have very grave doubts about it because there isn't a scrap of paper to support the testimony—no receipt, no cancelled check, no memorandum of any kind.

"But assuming the money was paid under the circumstances that the plaintiff and his son have described: It seems to me it would be at most a loan to the son, Victor, and to the community then existing between Victor and his wife Lucille. This is not one of those situations in which the actual purchaser of the property, for reasons of his own, prefers to take the title in the name of someone else. In

this case Victor and Lucille were becoming the purchasers of the property, and the father, on the basis of this testimony, was simply helping them by making a contribution to the down payment and then helping them later when they fell behind.

"Under the terms of the understanding as has been expressed here, it seems to me conclusive that it was a loan because it seems to be agreed that when the money was paid over something was said to the effect that when Victor got a job he would pay it back.

"You can't get an interest in real estate by any such informal transaction as that. Furthermore there is the presumption that where there is relationship of parent and child, a payment of money of this kind is presumed to be a gift.

"No, I think the case will have to be dismissed."

From the judgment of dismissal, plaintiffs have appealed, making four assignments of error, which are argued together in their brief, in support of their contention that the evidence was sufficient to establish *prima facie* a resulting trust in the real property here involved.

Neither appellants nor respondent presented any oral argument in this court.

It is true, as appellants contend, that a resulting trust in real property may be proven by parol testimony, but a resulting trust, whether in real or personal property, can only be established by evidence which is clear, cogent, and convincing. *In re Cunningham's Estate,* 19 Wn. (2d) 589, 143 P. (2d) 852; *Dines v. Hyland,* 180 Wash. 455, 40 P. (2d) 140; *Scott v. Currie,* 7 Wn. (2d) 301, 109 P. (2d) 526.

Furthermore, where property is deeded to the natural object of the donor's bounty, or where money to purchase real property is given to the natural object of the donor's bounty, a gift rather than a trust is presumed. *In re Cunningham's Estate, supra; Dines v. Hyland, supra; Scott v. Currie, supra.* See, also, *Walberg v. Mattson,* 38 Wn. (2d) 808, 232 P. (2d) 827.

In this case the evidence presented by appellants was not clear, cogent and convincing. On the contrary, the

testimony of the two appellants and their son, Victor, was conflicting and confusing, disagreeing in many respects.

It is not necessary for us to decide whether appellants' evidence established *prima facie* a gift or a loan. We are certain, however, that as a matter of law appellants' evidence was insufficient even to establish a *prima facie* case of a resulting trust in the property here involved, even if viewed in the light most favorable to them.

Consequently, the judgment of dismissal is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.