BENJAMIN YEISER, Sr., AS ANCILLARY GUARDIAN OF JOHN YEISER, BENJAMIN YEISER, Jr., AND RUTH YVONNE YEISER, MINORS AND HEIRS OF THE LATE MINNIE YEISER, NEE SHELTON, ALSO KNOWN AS MINNIE ROGERS, DECEASED, PLAINTIFF-APPELLANT, v. RAYMOND ROGERS, DEFENDANT-RESPONDENT, AND RAYMOND ROGERS, Jr., AN INFANT OVER 14 YEARS OF AGE, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 4, 1954—Decided October 29, 1954.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Samuel A. Bloom* argued the cause for appellant.

*Mr. George F. Losche* argued the cause for respondent (*Messrs. Schneider & Schneider*, attorneys).

The opinion of the court was delivered by

JAYNE, J. A. D.   Before the relatively recent advent of the renaissance in the procedural law of our State, the cause of action alleged by the plaintiff would have been reputed to be one in ejectment to recover possession of a residential property in the City of Englewood, Bergen County.   By way of a counterclaim the defendant sought the declaration of a presumptive or resulting trust in the property in his favor.

It was resolved that the equitable cause of action should first be presented to the court for determination and that the plaintiff's action at law should abide.   The judgment under review sustained the counterclaim.

We shall accept the factual findings of the trial judge and rationalize whether in such factual circumstances the defendant was entitled to the equitable relief granted to him.

The facts are rather elaborately revealed in the opinion of the trial judge, among which are those particularly pertinent to the more limited scope of our primary concern.   We need only marshal those facts in a summary fashion.

Prior to 1944 Minnie Shelton married Benjamin Yeiser, and of that wedlock John, Benjamin, Jr., and Ruth Yvonne, whom the plaintiff represents as guardian in this litigation,

were born. Perhaps as a mere coincidence, it was in 1944 that the marriage was dissolved and Minnie became associated with the defendant Raymond Rogers.

She was then a barmaid, and he was profitably occupied in conducting that unlawful pursuit popularly known as the "numbers game," of which he was the "banker." The retention and maintenance of separate household apartments were evidently mutually deemed to be uneconomical and inconvenient, so Minnie obtained shelter in both the apartment and arms of the defendant at 259 West 129th Street in New York City. This unconventional cohabitation was in uninterrupted progress when in 1950 the defendant had become sufficiently affluent to contemplate the acquisition of a suburban residence.

On June 13, 1950 Minnie contracted in writing to purchase the residential property implicated in the present case, and on July 31, 1950 acquired in her name the legal title to it by deed, for the purchase price of $15,000. The existing mortgage of about $7,000 was assumed and the balance of the price amounting to approximately $8,000 was paid in cash supplied to her by Rogers evidently from the earnings of his lucrative but unlawful enterprise. The enjoyment of the use of the property perpetuated the enjoyment of their informal and illicit affinity.

On August 22, 1951 Minnie died intestate and unmarried, leaving surviving her three minor children as her heirs at law.

It appears that on some previous occasion before the purchase of the property, the representatives of the United States Government had to his annoyance attached his automobile and his bank account. Concededly he kept no observable or discoverable records of his ill-gotten earnings.

It may be logically inferred that cognizant of that adverse misfortune, he did not intend by his voluntary action to allow such an embarrassment to arise again. In an earlier real estate transaction he had availed himself of the medium of a trust agreement with his niece and sister for his protection and benefit. We note his cryptic explanation of the present conveyance to Minnie:

"Q. There was nothing to stop you from taking title in your own name, was there? A. Personal reasons, I would say."

The trial judge determined as a fact that the defendant caused the conveyance to be made to Minnie, *inter alia*, "in order that his creditors could not attack it" (from a survey of the testimony we infer that he meant the United States Government), and that the defendant contemplated, perhaps, if and when his ardor for the presence of his mistress, a *locus poenitentiae*, or some other advantageous cause should eventuate, he would persuade or command Minnie to transfer the title of the residential property to him or some corporate nominee of his own.

Such was the factual scenery which accompanied and surrounded the transaction by which the defendant, by way of counterclaim, was enabled successfully to deprive Minnie's lawful heirs of the property.

The predominant question introduced to us for decision by the present appeal is whether in such a state of the factual circumstances a court of conscience should have rescued him. In our deliberations we cannot ignore the express finding of the trial judge that the defendant in the transaction was motivated by a temporary and then present intent "that creditors could not attack it."

Circumspectly we observe that the defendant is adjudged to have devoted his earnings from an unlawful, yea, criminal enterprise to the purchase of a home in which to continue his illicit relationship with his mistress.

■ Courts of equity have traditionally been alert to discover the uncleanliness of the hands of those who sought their aid. "The rights of fraud doers are not looked at in the light of the wrong they accomplish but of the wrong they plan." *Semenowich v. Melnyk*, 93 *N. J. Eq.* 615 (*E. & A.* 1922). *Vide, Blaine v. Krysowaty*, 135 *N. J. Eq.* 355 (*Ch.* 1944).

■ A consultation with the text of 3 *Scott on Trusts* 2264, § 444, will elucidate the authoritative foundations supporting our conclusion. Contrast *Creasman v. Boyle*, 31 *Wash. 2d*

345, 354, 196 *P. 2d* 835 (*Sup. Ct.* 1948); *Walberg v. Matt-son*, 38 *Wash. 2d* 808, 232 *P. 2d* 827 (*Sup. Ct. Wash.* 1951). See *Note,* 27 *Wash L. Rev.* 161 (1952). We firmly adhere to the principle that in all species of resulting trusts, intention is the superior element of consideration. *Gordon v. Griffith,* 113 *N. J. Eq.* 554 (*Ch.* 1933).

█ We are of the opinion that the capable trial judge justifiably determined the facts, but in this instance erred in his consequent decision.

The judgment is reversed and the action remanded to the end that the plaintiff's action at law may proceed.