[No. 11785.　Department One.　January 6, 1915.]

LUCY NICHOLSON, *Appellant*, v. T. T. KILBURY, *as Administrator, etc., Respondent.*[1]

PARTNERSHIP—EXISTENCE—PROOF — EVIDENCE — SUFFICIENCY.　As the existence of a partnership depends upon the intent of the parties, and may be established by circumstantial evidence, tending to show a joint or common venture combining property, labor or skill, or some of these elements for the purpose of joint profit, the evidence is sufficient to establish, between an aunt and niece, a partnership relation in the lodging house business, where it appears that the business was started entirely with the money of the niece, then a young girl, who devoted her whole time to the business for fifteen years, and through whose efforts the business gained large profits, and assumed large proportions including several establishments, and the aunt had declared many times in the presence of numerous witnesses that she and her niece were equal partners in all the business conducted; and when, in view of all the circumstances, little weight should be given to the fact that the business was conducted and titles taken in the name of the aunt.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 7, 1913, dismissing an action for an accounting, after a trial on the merits to the court.　Reversed.

*Voorhees & Canfield* and *C. E. H. Maloy,* for appellant.

*Peacock & Ludden* and *H. G. Kinzel,* for respondent.

ELLIS, J.—This is an action against an administrator for an accounting and settlement of the affairs of a partnership which it is claimed existed and continued between the plaintiff and the decedent from the fall of 1892 to the time of the decedent's death in October, 1911.

The evidence is very voluminous and much of it of little materiality.　We cannot, within the reasonable limits of an opinion, set out more than the salient facts developed.　It is not claimed that the contract of partnership was in writing,

[1]Reported in 145 Pac. 189.

and since one of the alleged partners is dead, the plaintiff could not testify to any express contract between her and the decedent. The evidence was therefore directed to an effort to establish the partnership by circumstantial evidence and the admissions of the decedent to various persons at different times throughout the existence of the alleged partnership. The following facts are either admitted or so thoroughly established by the evidence as to be beyond controversy.

The plaintiff was a niece of, and lived with, the decedent as a member of her family from the time she was a girl of fourteen. In the fall of 1892, when the plaintiff was about 17 years of age, she, with the decedent's family, moved from Sprague, Washington, to Spokane. She then possessed by inheritance from her mother furniture worth somewhere in the neighborhood of $1,000 and sufficient to furnish eight or ten rooms in a lodging house. This furniture was used in furnishing a lodging house on Sprague avenue, in the city of Spokane. The plaintiff was a girl of unusual energy and executive ability and gave her whole time and attention to the development of the rooming house business conducted in the name of her aunt. The Sprague avenue house was conducted until March, 1893, when the plaintiff's furniture was moved to another house, No. 225 Howard street, known as the Little Metropolitan Hotel, which was conducted from March, 1893, until some time in 1898. In the spring of 1893, the plaintiff, through final settlement with her guardian, received $570 in money which was also used in equipping the Little Metropolitan Hotel. The business prospered, and in 1895 or 1896, another lodging house on Howard street, known as the Star, was purchased. In 1897, another lodging house known as the Lauman House, on Riverside avenue, was purchased, furnished, and conducted as the other houses. It appears that, from March, 1893, until sometime in 1898, from one to three hotels were being successfully operated with considerable profit. In 1898, the three houses above mentioned were disposed of, and a house procured at 220 Howard

street, known as the Big Metropolitan Hotel. This was conducted until 1904, when it was sold and a larger establishment, known as the Riverside Hotel, was opened. This house was operated until 1909, when it was traded for two pieces of property in Whitman county, a farm, and seven lots in the town of Rosalia.

During nearly all of the time that the various lodging houses and hotels were operated, the plaintiff gave to them her constant attention, and for a part of the time conducted one or more of the houses with very little assistance from her aunt. It appears that, for about 14 or 15 years of this period, the plaintiff devoted all of her time and energy to the business, receiving no pay save her living. During the progress of the hotel business, a farm in the Big Bend country near Edwall was purchased, also two lots in Cook & King's addition to Spokane. The Edwall property was sold in 1902, and two lots in Moore's addition to Spokane purchased. This property is known in the record as the Mansfield property.

During this period, also, the decedent purchased an interest of certain of the other heirs in the estate of Amanda J. Fry, known as the Joseph Fry estate. The evidence as to this estate is not clear, but the plaintiff admitted that two notes aggregating $3,400 in amount given for a sale of a part of the Fry land, known as the Markel notes, were the personal property of the decedent and not partnership property, the land which they represented having come to decedent as one of the Fry heirs. In 1907, three lots in Peter Sapro's addition to Spokane were purchased. This property is spoken of in the record as the Fairview or home property. In 1899, the decedent married the defendant T. T. Kilbury, who is now the administrator of her estate. In 1906, the plaintiff also married. For a short time after her marriage, plaintiff lived in the Fairview or home property, but afterwards returned to the hotel and devoted her time to its operation for

a while, but it appears that, during the last year and a half of its operation, it was mainly conducted by the decedent.

The decedent had no property whatever at the time of embarking in the lodging house business. All of the furniture and money for starting the business were furnished by the plaintiff. All of the money for the purchase of furniture of the various hotels and for the purchase of the several properties, save such sums as the defendant claims that he himself furnished, was produced from the profits of operation and the proceeds of the sale of the various hotels. It clearly appears from the evidence that, during the progress of the business, the plaintiff and the decedent, from time to time, drew from the profits of the business such monies as were necessary for their living expenses, but had no accounting of any kind touching the partnership business. The uncontradicted evidence shows that the decedent many times, from 1893 up to her last illness in 1911, stated to several witnesses that the plaintiff was a partner in the business and was entitled to half of everything that the decedent held in her name. These statements were made to one A. L. Ritz, a brother-in-law of the decedent, many times during the years 1908 and 1909 and shortly before her death in 1911. He testified that the decedent at these times told him that all the money and property they owned when they opened the Little Metropolitan Hotel was Lucy's; that the decedent then had no money; that she, the decedent, had made whatever she had from that hotel as the start and that Lucy had a half interest in the business. One Margaret Frary also testified that, about the year 1898, she was living and boarding at one of the hotels in question, was well acquainted with the decedent, and that the decedent several times said to her that the plaintiff was a partner in the business and just as much entitled to her share of the profits as she, the decedent, was. Two other disinterested witnesses, one Miller and his wife, testified that they had lived and boarded at the Little Metropolitan Hotel in the year 1896 for a short time, and again in the year 1897, and at

times during the years 1898, 1899, and 1900 at other hotels conducted by the plaintiff and the deceased. Both testified that many times during those years the decedent had said to them that the plaintiff was a partner in the business and entitled to one-half of all that she, the decedent, had at any time. These witnesses also testified that, when the decedent in 1899 married the defendant, or shortly after the marriage, the decedent said to Mr. Miller that the plaintiff was threatening to withdraw from the business and demanding a settlement, that if she persisted in that course it would ruin her, the decedent, and asked Miller to intercede with the plaintiff and persuade her to let the business continue as before; that he did this with the result that the matter was not pressed and the decedent afterwards thanked him for his good offices in the matter. The decedent's two sons both testified that, at the time of the opening of the rooming house on Sprague avenue in 1892, the plaintiff's furniture was practically all of the furniture used in furnishing the house; that, on the opening of the Little Metropolitan Hotel in the spring of 1893, the plaintiff's furniture, and something over $500 of the plaintiff's money, was used in furnishing that hotel, that the decedent had no property of any kind at that time, and that the decedent, throughout all of the period when the hotels were being conducted, recognized the plaintiff as a full partner in the business and often said to them and in their presence that the plaintiff was her partner and entitled to half of everything she, the decedent, had.

As opposed to all of this evidence tending to show a partnership, there is but one circumstance worthy of serious consideration not in harmony with the partnership theory. That is, the fact, which is undisputed, that, throughout all of the period covered by the alleged partnership operations, all of the business was conducted in the name of the decedent either as E. J. Smith or E. J. S. Kilbury; that the bank account was kept in her name and that the title to all property purchased was taken in her name.

There were other circumstances testified to by defendant which it is asserted refute the claim of a partnership. To conserve space, we shall notice these but briefly. The defendant lived at intervals at the Sprague rooming house, at the Little Metropolitan Hotel, and other hotels conducted in the decedent's name prior to his marriage to the decedent in 1899. He claims that, during these times, he devoted his own time and labor to the promotion of the business, and, when he was otherwise employed, turned over to the decedent whatever monies he received above his own living expenses; that after the marriage he assisted the decedent in conducting the hotels and operating the farms and spent some of his own money in improving the farms and the other properties. He also joined with her in the execution of certain notes and mortgages for monies borrowed and secured on some of these properties, and the proceeds of such loans were used in the purchase and improvement of the properties. There were also introduced in evidence various bills and receipts rendered and given in connection with the hotel business running to the decedent or to the decedent and her husband, the defendant.

The trial court made no findings of fact or conclusions of law, but, after all of the evidence was in, entered a decree that the plaintiff take nothing by her action, but go hence, without day and that the defendant, as administrator of the estate of Emma J. Kilbury, deceased, receive his costs. The plaintiff has appealed.

The sole question presented by this appeal is whether the evidence was sufficient to establish the alleged partnership. Chancellor Kent defines a partnership as,

"A contract of two or more competent persons, to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss, in certain proportions." 3 Kent, Commentaries (14th ed.), p. *24.

See, also, *Ward v. Thompson*, 22 How. 330. There is no arbitrary rule by which it may be determined whether a part-

nership relation existed in a given instance or not. The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of. the parties. While a contract of partnership, either expressed. or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory. *Bridgman v. Winsness*, 34 Utah 383, 98 Pac. 186. It is well settled that no one fact or circumstance will be taken as the conclusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established. *McDonald v. Campbell*, 96 Minn. 87, 104 N. W. 760; *Torbert v. Jeffre*, 161 Mo. 645, 61 S. W. 823; *Corey v. Cadwell*, 86 Mich. 570, 49 N. W. 611; *Price v. Middleton & Ravenel*, 75 S. C. 105, 55 S. E. 156.

In *Haug v. Haug*, 193 Ill. 645, 61 N. E. 1053, a case closely analogous to that in hand in all points save that there the business was conducted under a partnership name, the court holding that the partnership was established by circumstantial evidence, said:

"There is no evidence in the record of any express contract of partnership, or written agreement of partnership, between the parties. It is well settled, however, that written articles of agreement are not necessary to constitute a partnership, but that a partnership may exist under a verbal agreement. (*Bopp v. Fox*, 63 Ill. 540). The existence of a partnership may be implied from circumstances. (*Kelleher v. Tisdale*, 23

Ill. 405). A partnership may arise out of an arrangement for a joint business, wherein the word 'partnership' may not have been used. 'If there is such a joinder of interests and action as the law will consider as equivalent, and regards as in effect, constituting a partnership, it will give to the persons so engaged all the rights, and lay upon them all the responsibilities, and to third persons all the remedies which belong to a partnership.' (*Morse v. Richmond*, 6 Ill. App. 166).

"It is also well settled that when, by agreement, persons have a joint interest of the same nature in a particular adventure, they are partners *inter se*, although some contribute money and others labor. Such a partnership may well exist, although the whole capital is in the first instance advanced by one party, and the other contributes only his time and skill and ability in the selection and purchase of the commodities. (*Robbins v. Laswell*, 27 Ill. 365)."

It is true that in that case the use of the partnership name was regarded as the most potent fact in evidence, still the other circumstances tending to establish the partnership were neither undisputed as here, nor by any means so convincing as those found here.

In *Bartelt v. Smith*, 145 Wis. 31, 129 N. W. 782, the alleged partnership involved the operation of a rural telephone business. No formal agreement was ever made. The title of the original stem from which the system was developed was taken in the name of one of the alleged partners. The other party, however, advanced the money for the purchase of this nucleus, to buy new material, and to operate the business. The parties operated the business together. The court held that these circumstances were sufficient to establish the partnership notwithstanding the lack of any express contract, either written or oral. The opinion implies that no partnership name was used in any part of the operation of the business. The court, speaking through Winslow, C. J., said:

"But it is not necessary that the partners should call themselves such. If they engage in a joint business enterprise,

each putting in capital or labor or both, with an agreement to share profits *as such*, there will be a partnership whatever they may call themselves. Nor need an express contract, either written or oral, be shown. Like other contracts which the law does not require to be in writing, a contract of partnership may be proven by circumstantial evidence, that is, by showing acts and conduct of the parties from which the fact may be inferred that the parties have agreed to become partners and share profits as such."

In view of all the evidence in this case, we give little weight to the fact that the business was conducted and titles taken in the decedent's name. When the business was started, the appellant was a mere girl. The other party to the venture was her aunt. Whatever their relative interest in the business, it seems only natural that it should be conducted in the name of the aunt. Since the aunt at all times admitted the partnership relation, it is not strange that the business was continued in her name. Nor do we see much probative force in the respondent's claim that he contributed of his own time and funds to the business. That contributed before the marriage was clearly a gift to the deceased, whom he then intended to marry. That contributed after the marriage would tend only to establish a community interest in his wife's half of the partnership property. Whether it would be sufficient, even for that purpose, we do not decide. It is true that, in the summer of 1907, a set of books was opened in the name of the respondent and the deceased, but that was near the end of the hotel business and after the appellant had already contributed some fourteen or fifteen years of her life and energy to its development. The circumstance is worthy of little consideration. The fact that the respondent joined in the execution of certain notes and mortgages is readily explained by the well known fact that the paper of a married woman is seldom taken without requiring that her husband join therein. Upon the whole record, we are clear that the partnership was fairly established. We fail, however, to find any evidence of an understanding that the appellant should receive a return

of the money and the value of the furniture which she originally contributed to the enterprise.

The judgment is reversed, and the cause is remanded with direction to enter a decree in favor of the appellant establishing her undivided one-half interest in the entire estate save the proceeds of the Markel notes which it was admitted represent property which came to the deceased by inheritance.

CROW, C. J., GOSE, CHADWICK, and MAIN, JJ., concur.