[No. 26280.   Department Two.   December 23, 1936.]

*In the Matter of the Estate of* BENJAMIN FRANKLIN
FINKE, *Deceased.*[1]

*Cecil C. Hallin,* for appellant.

*J. C. McCoy,* for respondent.

HOLCOMB, J.—This appeal comes from a decree upon a petition initiated by R. J. Finke against Katherine Green Finke, as executrix of the last will and testament of B. F. Finke, her husband. We shall designate petitioner as respondent and the executrix as appellant.

Respondent sought to have himself declared a partner, owning a one-fourth interest, in the Blue Ribbon Shingle Company, which was operated in his lifetime

[1]Reported in 63 P. (2d) 354.

by the testator. Appellant contends that B. F. Finke was the sole owner of the shingle business.

In June, 1932, C. W. Parker and B. F. Finke agreed to open the Blue Ribbon shingle mill at Kalama as equal partners, Finke to secure the lease for the plant from one Doyle and Parker to furnish one thousand dollars in cash. B. F. Finke obtained the lease, but Parker raised but five hundred dollars; and, on July 11, 1932, they modified the former agreement by entering into a written agreement wherein Parker would have a one-fourth interest and B. F. Finke would own a three-fourths interest.

On July 11, 1932, respondent purchased, with his own money, a draft for one hundred dollars, from the Puget Sound National Bank of Tacoma, in favor of B. F. Finke, which was received by him at Kalama the following day, endorsed by him, and for which he received the cash. On July 21st, respondent borrowed $264.39 on his life insurance policy with which he purchased a draft for $265 from the Puget Sound National Bank, also in favor of B. F. Finke. On July 27, 1932, this draft was endorsed and presented by him to the Kalama State Bank, which credited the proceeds to the Blue Ribbon Shingle Company. On April 15, 1933, Parker sold his interest to Charles Worrell, and B. F. Finke claimed to have purchased that interest from Worrell.

Worrell was employed by B. F. Finke in October, 1932, as bookkeeper for the shingle company; and after his employment, he set up a bookkeeping system and made entries at the direction of the deceased and with the assistance of loose data found in the files of the company. After the entry of the items of $100 and $265 in the book of account of the shingle company, the words "rec'd from R. J. Finke" in connection with the entry of the $100 item were very care-

fully erased by Worrell, and a like careful erasure was made by him in connection with the $265 item. B. F. Finke was the manager of the shingle company and drew a salary for his services, while respondent took no active part, but worked part time as a log scaler for which he received pay. As the trial court stated, the foregoing facts were established beyond a doubt.

The first claim of error is in admitting and considering the testimony of Parker because the evidence of the oral contemporaneous agreement tended to change, vary and enlarge terms of a written contract complete and unambiguous on its face. This assignment merits but little discussion. The written contract was not between respondent and B. F. Finke, but between B. F. Finke and Parker.

Be that as it may, there was ample evidence, written and oral, in the record, other than the testimony of Parker, to sustain the decree. See *Cravens v. Cravens,* 136 Wash. 126, 238 Pac. 901.

Declarations were made by B. F. Finke in his lifetime that respondent was his partner, which was competent evidence. *Mott v. McDonald,* 147 Wash. 106, 265 Pac. 153.

The second assignment is that the findings of fact and judgment made by the trial court are contrary to the law and the evidence. After having examined the evidence, as shown by the record, and the attempted obliteration and falsification by B. F. Finke's bookkeeper, we have little hesitancy in saying that any other findings or conclusions than those made by the trial court would be contrary to the law and the evidence.

Appellant also contends that the testimony is not sufficient to establish a partnership. We think it was, under our decisions in *Nicholson v. Kilbury,* 83 Wash.

196, 145 Pac. 189; and *Barovic v. Constanti*, 183 Wash. 60, 48 P. (2d) 257.

The last assignment is that the trial court erred in failing to apply the maxim, "He who comes into equity must come with clean hands," and therefore deny respondent any relief.

As before stated, there was a deliberate attempt to obliterate and falsify the records by the bookkeeper of decedent. It comes with ill grace to accuse respondent of coming into equity with unclean hands. We can see no evidence thereof in this record.

The decree was right and is affirmed.

MILLARD, C. J., TOLMAN, BEALS, and MITCHELL, JJ., concur.