[No. 42153. En Banc. July 27, 1972.]

*In the Matter of the Estate of* ROY C. THORNTON, *Deceased.* LUCY ANTOINE, *Petitioner,* v. THEO H. THORNTON, *as Executrix, Respondent.*

*Sid Buckley* and *R. E. Mansfield,* for petitioner.

*Kelly Hancock,* for respondent.

FINLEY, J.—This case involves an asserted interest in property which ostensibly belongs to, and is claimed by, a decedent's estate. The asserted interest is based upon the existence of a longtime partnership allegedly implied in fact and in law. Plaintiff appeals from the trial court's dismissal of her claim to such a partnership interest.

Roy Thornton died in Ferry County on July 26, 1969, leaving property in both Okanogan and Ferry County. On July 30, 1969, his surviving spouse, Theo H. Thornton, filed a petition for probate of his will in Okanogan County and, based upon a finding by the court that decedent was a resident of Okanogan County at the time of his death, she was appointed executrix.

On August 22, 1969, appellant Lucy Antoine filed a petition alleging the existence of a partnership interest with decedent in property located in Ferry County and requested a change of venue to Ferry County for the probate of those partnership assets. Thereafter, in support of her motion for a change of venue, appellant filed a supplemen-

tal petition alleging that Roy Thornton was a bona fide resident of and domiciled in the County of Ferry at the time of his death, and that even if it were held she had no partnership interest in the Ferry County property, she nonetheless had a valid claim against such property as a creditor of the estate of Roy Thornton. The motion for change of venue was denied on October 14, 1969. It is asserted that thereafter, on November 28, 1969, appellant filed a creditor's claim for the reasonable value of labor performed by her and her children and for sums advanced by her. The total claim was for $68,525.

On April 21, 1970, appellant proceeded to trial on her claim to a partnership interest in the property located in Ferry County. The trial court dismissed her claim for failure to establish a prima facie case. The Court of Appeals, Division Three, affirmed the action of the trial court. *In re Estate of Thornton,* 5 Wn. App. 1008 (1971). We granted plaintiff Lucy Antoine's petition for review.

The evidence considered in the light most favorable to appellant was correctly summarized by the Court of Appeals as follows: At all times material herein Roy Thornton was married to Theo Thornton, who resided in the family home in Okanogan County. Apparently, in the early 1950s they separated and Roy Thornton moved to Ferry County. In 1953 Thornton and appellant Lucy Antoine began living together in the same household in Ferry County, and thereafter four children were born. They all lived in a family relationship continuously until Roy Thornton died in 1969.

In the early 1950s Lucy Antoine and Roy Thornton began raising cattle on property located in Deer Creek, Washington. From the profits derived from that ranch, property known as the Malo farm, located in Ferry County, was acquired in the name of Roy Thornton. In 1961 the cattle-raising business was moved to the Malo farm, which became a prosperous operation. Lucy Antoine participated in both the decisions concerning the farm's management, and in the day-to-day operations thereof. From 1967 until his death Roy Thornton did not engage in any physical

activity on the farm because of failing health due to emphysema. He did, however, control monies received and expended on the farm operation through a checking account upon which he alone could draw. When money was needed in the course of operating the business, it was the practice for Lucy Antoine to write the necessary checks and for Thornton to sign them.

The record is clear that Lucy Antoine worked hard in the cattle-raising project over a period of 16 years and that her efforts significantly contributed to success of the business venture.

The principal issue in this appeal is whether the surviving member of a couple living in a meretricious relationship may prove the existence of a partnership or joint venture agreement involving business property ostensibly or seemingly owned by the deceased partner, by showing the surrounding circumstances and the acts of the couple, rather than by proving the existence of an express contract of partnership. Appellant Lucy Antoine contends that such acts and surrounding circumstances *are* sufficient to prove the existence of a partnership or joint venture, and that the trial court erred in granting defendant's motion for a nonsuit against her on the grounds that she had failed to show that an express contract of partnership existed. We agree. Plaintiff Antoine was wrongly nonsuited; the statement of facts reveals that she adequately met the burden of coming forward with sufficient evidence to make out a prima facie case of implied partnership.

■ We are faced with three possible and potentially conflicting characterizations of the transactions here in issue. Listed in descending order of difficulty of proof, the three legal categories in which plaintiff Lucy Antoine's claim conceivably might be placed are: (1) the existence of a contract or agreement to make a will; (2) the existence of a relatively long-term, stable meretricious relationship in which the partners appear to hold themselves out as husband and wife; or (3) the existence of an implied part-

nership of Lucy Antoine and Roy Thornton to engage in the cattle and farming business.

To establish the first of these categories, the existence of a contract to make a will, it must be shown (1) that a contract as alleged was entered into between the deceased and the person asserting the contract; (2) that the services contemplated as consideration for such agreement have actually been performed; and (3) that such services were performed in reliance upon the agreement. *Humphries v. Riveland,* 67 Wn.2d 376, 407 P.2d 967 (1965); *Blodgett v. Lowe,* 24 Wn.2d 931, 167 P.2d 997 (1946). Until recently, these three elements were required to be established by evidence that is conclusive, definite, certain, and beyond all legitimate controversy. *Arnold v. Beckman,* 74 Wn.2d 836, 447 P.2d 184 (1968); *Bicknell v. Guenther,* 65 Wn.2d 749, 399 P.2d 598 (1965); *Jennings v. D'Hooghe,* 25 Wn.2d 702, 172 P.2d 189 (1946). However, in *Cook v. Cook,* 80 Wn.2d 642, 497 P.2d 584 (1972), we have modified and reduced that standard of proof by requiring only that the trier of fact be convinced to a "high probability" that the required elements of a contract are present.

In cases clearly falling in this category of "contracts to devise" we have said that the existence of an express contract or agreement must be proven. It is apparent that Lucy Antoine has failed to prove in the instant case the existence of such an express contract or agreement to devise. But her inability to do so does not prevent her from proving the existence of an implied partnership; the very fact that a partnership can be implied (*see Nicholson v. Kilbury,* 83 Wash. 196, 145 P. 189 (1915)) negates the necessity of proving the existence of an express contract or agreement of partnership.

The second basis upon which appellant Lucy Antoine could have made her claim is her longtime, meretricious relationship with Roy Thornton. She could have argued that, regardless of Roy Thornton's testamentary intent evidenced by his will, their 17-year period of living together

in the same household, bearing children, and working on the property owned by Roy Thornton, created in her behalf a right similar to that of a legal wife in the community property of the spousal unit, entitling her upon his death to a one-half share of the couple's "community property."

Such an argument, however, runs afoul of the holding of this court in *Creasman v. Boyle*, 31 Wn.2d 345, 196 P.2d 835 (1948), wherein we concluded that a meretricious relationship cannot give rise to community property, stating that

> property acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation*, belongs to the one in whose name the legal title to the property stands. . . .
>
> . . .
>
> However, even though there be no lawful marriage between such parties, yet if either or both of them in good faith enter into a marriage with the other, or with each other, and such marriage proves to be void, a court of equity will protect the rights of the innocent party in the property accumulated by the joint efforts of both.

31 Wn.2d at 351-52.

We are dubious about the continuing validity of this legal presumption or fiction, accepted and applied by the court in *Creasman v. Boyle, supra*. We have disclaimed, and continue to disclaim, any opinion or intended reflection on the moral status of a couple living in a meretricious relationship (*see Humphries v. Riveland*, 67 Wn.2d 376, 386, 407 P.2d 967 (1965)). It would appear that the only basis for applying this presumption in the case of a meretricious relationship and not in the case of an innocent but mistaken belief in the existence of a valid marriage, is that the couple who knows they are not married *must have consciously intended* that the party in whose name title was taken should have the exclusive interest in the property, while the couple who mistakenly thought they were married *must have intended* that each should have the equivalent of a community interest in the property.

Such a thesis or assumption certainly has a moralistic aura, but is realistically and objectively questionable. Under the test of *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969), a presumption involving constitutional rights must fall unless there is a substantial assurance that the presumed fact is more likely than not to follow from the proven fact. It is doubtful that the presumption in question could meet this test. Furthermore, the combined effects of the presumption and the dead man statute make it very difficult to rebut the presumption where the couple has lived harmoniously together until their relationship was interrupted by death. In such cases the court has consistently applied the presumption to deny any interest in the disputed property to a survivor who has no apparent, paper, or legal title. *Creasman v. Boyle, supra; In re Estate of Sloan*, 50 Wash. 86, 96 P. 684 (1908); *Stans v. Baitey*, 9 Wash. 115, 37 P. 316 (1894); *cf. Humphries v. Riveland, supra*. But where the couple has lived in conflict and separated, and the dead man statute does not bar testimony by the nontitled partner, the court has not applied the presumption in such a way as to deny the nontitled party his equitable or partnership share. *West v. Knowles*, 50 Wn.2d 311, 311 P.2d 689 (1957); *Iredell v. Iredell*, 49 Wn.2d 627, 305 P.2d 805 (1957); *Poole v. Schrichte*, 39 Wn.2d 558, 236 P.2d 1044 (1951); *Walberg v. Mattson*, 38 Wn.2d 808, 232 P.2d 827 (1951). Since in cases where the nontitled party has been allowed to testify the court has found the presumption rebutted by the evidence, it would appear that the presumption is of questionable validity and possibly unconstitutional under the *Leary* test.

But, appellant Lucy Antoine has not based her claim to the property in question, either in the trial court or on appeal, upon her right to share in the property as if it were community property, or upon an attempted rebuttal of the presumption that such property belongs to the person who holds title thereto. Instead, she has based her claim on the existence of an implied partnership. Therefore, in the ab-

sence of an appropriate record from the trial court and without the aid of argument on appeal, we do not decide whether the presumption of *Creasman* remains valid. Arguably, *Creasman* should be overruled and its archaic presumption invalidated. But again, it is not necessary for us to pass on this issue in the instant case as we have concluded that, under the implied partnership doctrine on which Lucy Antoine relies to sustain her claim, she has made out a *prima facie case of implied partnership* and was wrongly nonsuited by the trial court.

At trial, Lucy Antoine was faced with (1) the nonexistence of a contract to devise, and (2) the questionable presumption against the existence of "community property" in a meretricious relationship. It is therefore logical that she attempted to show in the trial court and argued on appeal that there existed an implied contract of partnership between herself and Roy Thornton.

 The law of implied partnership is accurately stated in *Nicholson v. Kilbury*, 83 Wash. 196, 202, 145 P. 189 (1915):

> The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties. While a contract of partnership, either expressed or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory. *Bridgman v. Winsness*, 34 Utah 383, 98 Pac. 186. It is well settled that no one fact or circumstance will be taken as the conclusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established.

■ Keeping in mind that "[a] motion for nonsuit admits the truth of the evidence, and all inferences arising therefrom, of the party against whom the motion is made", *Messina v. Rhodes Co.*, 67 Wn.2d 19, 20, 406 P.2d 312 (1965), we believe that Lucy Antoine has made out a sufficient prima facie case for the existence of an implied partnership. She and Roy Thornton jointly contributed their labor to the cattle and farming enterprise; the evidence reveals that they shared in the decision making concerning the enterprise; and, necessarily, they benefited jointly from the profits thereof. From the circumstances of their relationship and their acts in the management of the farming business, the existence of a contract of partnership can be inferred.

Any decision to the contrary could result only from confusion of the implied partnership principle with other doctrines upon which appellant's right to share in the property could have been based. In the case of an asserted *contract to devise*, the existence of an express contract must be proven, and the trier of fact must be convinced to a *high probability* (*see Cook v. Cook, supra*) that the contract does in fact exist. In cases of an asserted *right to share in property acquired by a couple living in a meretricious relationship*, we have set forth in *Creasman*, and do not at this time overrule, a presumption that such property belongs to the party in whose name the title rests. But there are no such difficult and questionably valid hurdles to overcome in proving the existence of an implied partnership. Plaintiff's choice of trial theory avoided the pitfalls of *Creasman* and of proving an express contract to devise, in favor of proof by circumstantial evidence of the existence of a partnership.

In the case of such an asserted *partnership to operate a business for profit*, it need only be shown that a contract of partnership can be implied from the facts and circumstances of the case. The existence of an express contract need not be proven prior to the introduction of such cir-

cumstantial evidence. The *Creasman* presumption does not prevent the demonstration of such an implied partnership contract, because that presumption applies only to asserted claims of property rights based solely on the existence of a meretricious relationship, and cannot be applied to frustrate the application of the normal law of partnership.

We therefore conclude that appellant has made a sufficient prima facie case of implied partnership, and that the decision of the trial court granting defendant's motion for a nonsuit must be reversed.

Appellant also assigns error to the refusal of the trial court to grant her petition for change of venue to Ferry County, based upon her contention that decedent was a resident of Ferry County at the time of his death. Determination by the trial court that decedent was a resident of Okanogan County was made on July 30, 1969. Appellant sought no review of that determination either by appeal or certiorari. Instead, appellant proceeded to trial on April 21, 1970, on her separate claim of partnership interest in the property. The Court of Appeals correctly concluded that the order of July 30, 1969, was a final order disposing of the jurisdictional question of residence, and that failure to appeal from it at that time precludes appellant from raising the issue in this separate action to establish a partnership interest in decedent's property. *See State ex rel. Neal v. Kauffman*, 86 Wash. 172, 149 P. 656 (1915); *In re Estate of Bronson*, 185 Wash. 536, 55 P.2d 1075, 107 A.L.R. 238 (1936).

This we affirm. But on the merits the trial court should be reversed and a new trial granted to appellant Lucy Antoine. It is so ordered.

ROSELLINI, HUNTER, HALE, WRIGHT, and UTTER, JJ., concur.

HAMILTON, C.J., NEILL and STAFFORD, JJ., concur in the result.