[No. 1044-2.     Division Two.     June 5, 1974.]

HELEN H. OMER, *Respondent*, v. DANIEL OMER *et al.,* *Appellants.*

*Robert G. Kerr,* for appellants.

*Robert S. Felker,* for respondent.

PEARSON, C.J.—This is an action by plaintiff, Helen Omer, claiming an interest in several parcels of real property held in the name of defendant, Daniel Omer, her former husband. From a decree awarding plaintiff a one-half interest in each of the parcels as tenant in common, defendant appeals.

Defendant challenges both the sufficiency and quantum of evidence on portions or all of the 13 findings of fact entered by the trial court. Defendant also asserts that the findings do not support the conclusion of coequal tenancy.

Our review of the evidence convinces us that all the factual findings entered are supported by the testimony of plaintiff, whom the trial court had every right to believe, even though her testimony was contradicted in many particulars by defendant. Even if plaintiff were required to meet the "high probability" or "clear, cogent and convincing" standard of proof,[1] it is our view that such standard was met. This is particularly true since plaintiff's testimony in many important particulars was substantiated by the testimony of the two adult children of the parties, as well as by many undisputed events testified to by both parties.

Consequently, we confine ourselves to the controlling legal question of whether the findings support the conclusion of cotenancy. For the reasons set forth below, we are of the opinion that they do and that judgment should be affirmed.

[1] *See In re Estate of Thornton,* 81 Wn.2d 72, 499 P.2d 864 (1972).

The relationship of plaintiff and defendant was stated by the trial court to be "technically" meretricious. The wisdom of this denomination is apparent from a consideration of the established facts.

The parties were married in Israel in 1949. During the course of their marriage, they had two children. In 1959, at the urging of Daniel Omer, at that time employed by the United States Embassy in Israel, the parties were divorced. It was the stated opinion of the defendant that the divorce would facilitate the entry of the parties and their children into the United States. Subsequent to this divorce, the parties continued to live together as husband and wife in Israel.

In early 1963, the plaintiff came to New York. The defendant arrived in New York with the children the following year. The parties lived together in New York and operated together a luncheonette in that city. Both parties further entered into sham marriages to expedite their plans to obtain United States citizenship. (These marriages were terminated after the parties obtained citizenship.)

The defendant moved to Washington some time later. The record discloses that at his request, the plaintiff remained in New York with the children and regularly sent portions of her earnings to him in this state. He assured her that he was building a "paradise" for the family here, that she must continue to work and remit money to him, and in no event to disclose their relationship to third parties so as to impair naturalization prospects.

The trial court found that the plaintiff had difficulty with the English language, and that she was reliant upon the defendant for guidance and advice.

At various times while plaintiff remained in New York, the children came to Washington and resided with their father. Eventually, the plaintiff moved to Washington. The parties continued to live together here; Mrs. Omer continued to work and to turn paychecks over to the defendant.

Throughout this period, the defendant acquired the parcels of real estate which are the subject of this action. In 1969 the relationship between the parties deteriorated seriously; plaintiff was abused and rejected by the defendant, and she eventually brought this action, seeking a division of the real property.

The trial court found that from the time of the divorce until 1969, the intent of the parties was to further the interests of their family community. Telling in this connection was the testimony of the children that they were unaware until 1969 that their parents were, in fact, not married. In light of this intent, and the labors and contributions made by the plaintiff in furtherance of it, the trial court entered this finding of fact:

> That the property mentioned above was acquired through the joint efforts, by the plaintiff and by the defendant, in which they combined their earnings and accumulations of labor and their skills, and the funds contributed by the plaintiff were used by the defendant in the acquisition and the payment of the properties mentioned and were so intended to be used.

The settlement of property rights arising out of meretricious relationships has had a busy history in this state. It has generally involved two classes of cases: (1) those involving the claim of a meretricious "spouse" against the estate of the deceased partner to the relationship who held title to assets acquired during the relationship (*Creasman v. Boyle*, 31 Wn.2d 345, 196 P.2d 835 (1948)); and (2) those, like the one at bench, involving the claim by a meretricious spouse who has become estranged from the one who holds title to property acquired during the relationship. *West v. Knowles*, 50 Wn.2d 311, 311 P.2d 689 (1957). Aside from the obvious difficulty in proving the claim where one party is deceased, there appears little other reason to differentiate between the rules applicable to the two classes of cases. *See In re Estate of Thornton*, 81 Wn.2d 72, 499 P.2d 864 (1972).

Much of the history has recently been reviewed by the

Supreme Court in *Humphries v. Riveland,* 67 Wn.2d 376, 407 P.2d 967 (1965) and *In re Estate of Thornton, supra.* We offer a brief summary of that history by first considering the rule enunciated in *Creasman v. Boyle, supra,* which poses a difficult hurdle to an equitable adjustment of the property rights of meretricious spouses. In *Creasman* the Supreme Court at page 351 established the following legal presumption:

> [P]roperty acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, *in the absence of some trust relation,* belongs to the one in whose name the legal title to the property stands.

Because of the harshness of the announced rule, certain theories have been established as exceptions. In many instances these theories require fictional applications. Examples are (1) implied partnership or joint venture, *In re Estate of Thornton, supra*; (2) constructive trust, *Humphries v. Riveland, supra*; (3) resulting trust, *Walberg v. Mattson,* 38 Wn.2d 808, 232 P.2d 827 (1951); (4) express or implied contract (to make a will), *In re Estate of Thornton, supra*; and (5) community property interest arising out of a long-term stable meretricious relationship, *In re Estate of Thornton, supra.*

Without intending to unduly generalize, it appears from our review of the cases that if the joint efforts of the meretricious spouses relates to a business enterprise of some kind, an implied partnership affords the most viable theory of recovery. *Poole v. Schrichte,* 39 Wn.2d 558, 236 P.2d 1044 (1951); *In re Estate of Thornton, supra.* Otherwise, the party seeking to establish the claim usually must rely on either a constructive trust theory with its requirement of fraud, overreaching, or inequitable conduct, *Humphries v. Riveland, supra,* or a resulting trust theory with its requirement that the parties must have intended one party would hold the property in trust for the other who furnished the consideration for its purchase. *See Creasman v. Boyle, supra; Walberg v. Mattson, supra.* Proof of these

theories must meet the clear, cogent, and convincing standard of proof, as an additional hurdle. *Manning v. Mount St. Michael's Seminary*, 78 Wn.2d 542, 477 P.2d 635 (1970); *Humphries v. Riveland, supra.*

A theory which would appear to involve the least fictional analysis has so far not been adopted in this state. That theory would recognize that certain meretricious relationships of long and durable standing may give rise to community property rights similar to those which prevail between married persons. *See In re Estate of Thornton, supra,* where the Supreme Court expresses some reluctance to continue resistance to this theory, but still declines to overrule or modify *Creasman v. Boyle, supra.*

The case at bench affords cogent reasons for supporting plaintiff's claim by analogy to the community property laws. Here the parties appear to have been divorced solely for the expediency of gaining entry to and citizenship in this country. In all other respects they lived together, raised a family and acquired property through joint efforts and money, as though they were in fact married.

If, in passing upon this type of case, the court is truly exercising its inherent power to do justice between the parties, and is not making its judgment on the basis that the relationship is illicit, as many of the cases suggest, it seems unwise that we should require proof of some fictional relationship by clear, cogent and convincing evidence in order to escape the consequences of a rigid legal presumption. This approach may deny, rather than achieve justice between the parties. *See* both dissents in *Humphries v. Riveland, supra; see In re Estate of Thornton, supra.*

It seems to us that a better approach would be to let proof of the relationship itself, its purpose, duration, stability, and so forth, determine the merits of the claim, and then, if warranted by the facts, hold that the community property laws should be applied by analogy to determine the rights of the parties.

If our trial courts were free of rigid doctrinal analysis, legal presumptions, high standards of proof and so forth,

and could make determinations on the basis of the facts and equity of the particular case, it is our opinion that a just result could be achieved more often than it is presently.

Since *In re Estate of Thornton, supra,* compels adherence to the traditional approach, we now reach the question of whether or not the facts as found by the trial court are sufficient to justify the conclusion it reached. In other words, do those findings support either a constructive trust or an implied partnership, to justify the division of property decreed?

Perhaps the simplest theory for affirming the judgment would be for us to hold that the finding quoted above relating to the joint efforts of the parties is sufficient to establish an implied partnership or joint venture and rely upon the statements pertaining to that theory as enunciated in *In re Estate of Thornton, supra.*

The difficulty we have with this simplistic approach is that the parties clearly did not either expressly or impliedly intend a business relationship. The clear thrust of the findings was that the nonmarital status of the parties was conceived by defendant and carried out under his direction for the sole purpose of allowing his family the benefits of United States immigration and citizenship. But for that purpose, the parties would not have divorced in Israel nor entered into sham marriages in this country. The property was acquired by the joint efforts of the parties with that goal in mind and with the ultimate goal of remarriage when citizenship was achieved.

Without rejecting an implied partnership out of hand, other findings convince us to affirm the judgment on a theory of constructive trust. The real intention of the parties appears in finding of fact No. 8:

> That while the property was taken in the name of the defendant it was the intent of the parties that the property would be shared both by the plaintiff and the defendant when they would once again be reunited as husband and wife in this country, as they had been in Israel once their citizenship was acquired.

Inasmuch as the trial court also found that defendant initiated and directed the changes in marital status, allegedly to further the goal of United States citizenship, and since plaintiff followed his advice and directions and contributed to the goals with labor and money, it would be grossly inequitable to deny her the relief sought.

It was stated by Justice Cardozo that "A constructive trust is the formula through which the conscience of equity finds expression." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919). A further amplification of the doctrine appears in *Proctor v. Forsythe,* 4 Wn. App. 238, 242, 480 P.2d 511 (1971):

> A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Restatement of Restitution § 160 (1937). Our court has noted that constructive trusts are those which arise purely by construction of equity and are entirely independent of any actual or presumed intention of the parties and are often directly contrary to such intention. They are entirely in invitum and are forced upon the conscience of the trustee for the purpose of working out right and justice or frustrating fraud. *Carkonen v. Alberts,* 196 Wash. 575, 83 P.2d 899, 135 A.L.R. 209 (1938).

This description of the doctrine of constructive trusts describes rather well the circumstances of this case and we believe the findings of the trial court justify its application.

It is true, there is no specific finding of fraud or misrepresentation or overreaching. There is, however, a clear element of unconscionability inherent in the findings of the trial court which, in our view, justifies application of the doctrine of constructive trust.

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied July 11, 1974.

Review denied by Supreme Court October 11, 1974.