[No. 1163-3.    Division Three.    October 30, 1975.]

In the Matter of the Estate of Roy C. Thornton.
Lucy Antoine, *Appellant*, v. Theo H. Thornton, *as Executrix, Respondent.*

*McNally & Stewart* and *Fred L. Stewart*, for appellant.

*Kelly Hancock, P.S.*, and *Robert Kovacevich*, for respondent.

Munson, J.—Lucy Antoine appeals from a judgment declaring she is not entitled to an interest in the estate of the deceased, Roy C. Thornton. Appellant contends the trial court erred in finding that the relationship between Roy C. Thornton and herself was one of employer-employee, which did not serve to establish her interest in the estate on the basis of (a) an implied partnership; (b) a joint adventure; (c) a constructive or resulting trust; or (d) a meretricious relationship.[1]

The Supreme Court reversed the trial court's granting of respondent's motion to dismiss at the conclusion of appel-

---

[1] In *In re Estate of Thornton*, 81 Wn.2d 72, 499 P.2d 864 (1972), the court stated that an additional possibility may have existed by contract or agreement to make a will. Appellant did not urge this contention on retrial. Our review convinces us there is no evidence to support such a contention; it is not now an issue.

lant's case. *In re Estate of Thornton,* 81 Wn.2d 72, 499 P.2d 864 (1972).[2] The matter has now been heard and considered in its entirety. Appellant's present assignments of error are not well taken; the trial court's findings of fact are supported by substantial evidence. We affirm.

Roy and Theo Thornton were married August 12, 1914, and remained married until his death July 26, 1969. Seven children were born of this marriage, four daughters and three sons. During their marriage, they acquired large orchard holdings in Okanogan County and other real property in Ferry County.

In 1946, the appellant, then age 21, left her home in Canada and traveled with her "common-law" husband, Johnnie Lezime, to the Okanogan Valley. One of their several employers was Roy C. Thornton, then age 53. They worked for the Thorntons in various jobs until 1949. About 1½ years later, appellant contends Mr. Thornton persuaded her to work for him again and she moved into a house on his property known as the Colbert place in Okanogan County. While there, she performed various orchard jobs and assisted in raising cattle. She states Roy Thornton did not live with her at that time, but did visit her regularly.

In 1953, she moved to Ferry County to work in the Thorntons' logging operation. While living there, appellant testified Johnnie Lezime "came and went on his own." Thereafter, she lived in several homes located on the Thorntons' property and assisted in raising cattle. During this period, the Thorntons' sons participated in various aspects of the Thorntons' business operation, dealing with orchards, logging, cattle raising, and crops. There also appears to have been several cooperative efforts between members of the Thornton family, sometimes in partnership, to improve and maintain the highest economic benefit from the utilization of their various properties.

About 1960, Mr. Thornton's health began to deteriorate; his condition was aggravated by the chemical sprays used

---

[2] *Cf.* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 742-45 (1974); noted in 48 Wash. L. Rev. 635 (1973).

in the orchard areas of Okanogan County. It was discovered the higher elevation of the Ferry County region, accompanied by the lack of chemical sprays, was more accommodating to his health; he began to reside in Ferry County on a permanent basis. In Ferry County the appellant and Mr. Thornton jointly occupied the same residence; however, he continued to visit his wife and children regularly, including holidays.

There is extensive testimony that appellant worked diligently during this entire period doing physical farm labor and as a housekeeper; as Mr. Thornton's health became more impaired, she performed a more active managerial function, including the buying and selling of hay and cattle.

The testimony presented numerous conflicting questions of fact concerning the relationship between these two people: whether they occupied the same or separate bedrooms; whether Mr. Thornton showed more than normal affection toward the appellant and her four children, who were born in 1952, 1955, 1957 and 1960; whether the appellant routinely received compensation as a housekeeper and employee of Roy C. Thornton or as a business associate; whether the appellant and Mr. Thornton indiscriminately used their registered brands in branding cattle; and whether real property the appellant purchased in Canada in 1967 was part of the alleged partnership, are examples of the factual conflicts.

We paraphrase some of the trial court's factual determinations, supported by substantial evidence, which detract from the appellant's factual contentions.

1. Roy C. Thornton owned all of the property possessed at his death as community property in that he and Theo Thornton had been continuously married; there was no evidence of their ever having been estranged. He was always welcome in his home in Okanogan County and while there shared a bedroom with his wife, Theo.

2. Assets used in the financing of the Okanogan County operations were also used to aid in financing the operations in Ferry County; there was an interchange of funds that

were diverted from the Okanogan County operation to the Ferry County operation; equipment, cattle, hay, parts and supplies went from Okanogan County to Ferry County as conditions necessitated. Bank accounts were in the name of Roy Thornton, or the name of Thornton operations in Okanogan County. Roy Thornton signed all checks issued pursuant to the Ferry County operations and his was the only authorized signature to appear on any check during the entirety of the farming operation.

3. Checks made payable to Lucy Antoine, as well as her son, Caesar Antoine, were for services rendered with regard to the Ferry County operation. She and her son maintained their own separate bank accounts at all times. There was no showing of any sharing of profits, nor that appellant had ever pledged her credit to obtain any loan or otherwise aid in the financing of the Ferry County operation.

4. Both Roy C. Thornton and Lucy Antoine possessed separate cattle brands; both brands were used upon cattle raised in Ferry County.

5. Prior to the death of Roy C. Thornton, the appellant made several applications for public assistance on which she did not declare the existence of any assets relating to the properties owned by Roy C. Thornton. Likewise, on March 18, 1969, appellant made application for a bank loan and did not declare she possessed an interest in the property in Ferry County. Appellant made sworn statements that she was an employee of Roy C. Thornton when she sought an insurance settlement arising from a personal injury to her son as a result of a farm accident on the Thornton property.

6. The Thornton daughters contributed approximately $21,000 in 1964 to aid in the payment of a judgment obtained by a son, Neal, against his parents, Roy and Theo, which jeopardized the properties located in both Ferry and Okanogan counties. This action established Neal's partnership interest in the Thornton property located in Ferry County. Lucy Antoine, knowing of the litigation, took no action whatsoever relating to her claim of a partnership

interest, nor did she make any contribution to aid in payment of the judgment.

7. In his last will and testament, Roy Thornton named his wife, Theo Thornton, as executrix and left his estate to his four daughters. His will expressly declared he was not the father of Lucy Antoine's four children.

### IMPLIED PARTNERSHIP OR JOINT ADVENTURE

There being no proof of an express contract to create a partnership, appellant contends there existed an implied partnership arising from her relationship with Roy C. Thornton. In *In re Estate of Thornton, supra* at 79, citing *Nicholson v. Kilbury*, 83 Wash. 196, 202, 145 P. 189 (1915), the court stated:

> The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties. While a contract of partnership, either expressed or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory.

The evidence here is as consistent with a finding that the appellant was a managerial employee authorized to incur financial obligations involving buying and selling farm products and cattle, who was consulted in the purchase of various equipment, as it is that she was a partner. Appellant correctly contends an implied partnership may be found to exist even though title to the alleged partnership property is held in the name of but one of the alleged partners. The trial court specifically found, however, the parties never intended to create either a partnership or joint adventure. That finding is supported by substantial evidence; this court will not substitute its judgment for that of

the trial court. *Bach v. Sarich*, 74 Wn.2d 575, 445 P.2d 648 (1968).

### EXISTENCE OF TRUST RELATIONSHIP

*Humphries v. Riveland*, 67 Wn.2d 376, 390, 407 P.2d 967 (1965), stated that, as between two cohabitating parties, a constructive trust will not be imposed unless there be evidence of fraud, overreaching, breach of fiduciary responsibility, breach of contract, or mistake. Additionally, clear, cogent and convincing evidence is necessary to find a constructive trust. There is no proof, nor was there ever an allegation, of fraud, overreaching, breach of fiduciary responsibility or breach of contract. In the absence of such evidence, there cannot be said to be a constructive trust. *Bland v. Mentor*, 63 Wn.2d 150, 385 P.2d 727 (1963).

In *Omer v. Omer*, 11 Wn. App. 386, 392, 523 P.2d 957 (1974), the court found the existence of a constructive trust based upon a finding of the trial court that it was the intent of the parties to create such a relationship at all times. Here, there is no such finding nor evidence to support such a finding. Likewise, there is no evidence to support the existence of a resulting trust.

### EXISTENCE OF NECESSARY MERETRICIOUS RELATIONSHIP

In *In re Estate of Thornton*, 81 Wn.2d 72, 75, 499 P.2d 864 (1972), the court set forth the elements required to prove the existence of a meretricious relationship which may give rise to a property interest: "[E]xistence of a relatively long-term, stable meretricious relationship *in which the partners appear to hold themselves out as husband and wife.*" (Italics ours.)

■ It is undisputed that both the appellant and the deceased were aware of the validity of the existing marriage between Roy and Theo Thornton. The appellant acknowledged she was aware of his marital status at all times. The question presented is whether the appellant's relationship, in and of itself, was sufficient to constitute a meretricious relationship giving rise to a property interest. The record is void of any testimony that during the exist-

ence of the Thornton-Antoine relationship either of them appeared to "hold themselves out as husband and wife." On the contrary, Theo Thornton, the legal wife of Roy C. Thornton, was at all times acknowledged and recognized by the community as the sole wife of Roy C. Thornton; Lucy Antoine was never so recognized.

Undoubtedly, there will be cases where facts, unlike those presented here, denote the parties have taken up a meretricious relationship and hold themselves out as husband and wife. While the trend of the law may be to recognize that such a relationship gives rise to a property interest, as to property acquired during the course of such a relationship, such a determination will have to await a factual pattern supportive of such a conclusion. From the facts of this case, it cannot be said that Roy C. Thornton and Lucy Antoine ever held themselves out as husband and wife.[3] Appellant's evidence fails to establish the elements of the necessary relationship.

There is evidence to support the trial court's findings and the conclusions drawn therefrom. We affirm.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied December 2, 1975.

Review denied by Supreme Court February 10, 1976.

---

[3]The trial court's finding No. 21 reads as follows:

"The Court further finds for the respondent and against the petitioner based on all the evidence introduced herein, and the Court finds that the most believable evidence and the most credible evidence shows that the petitioner at no time met the burden of proof in respect to the issues that she sought to prove relative to the Ferry County property and that all claims of the petitioner relative thereto must fail as she did not meet the burden of proof of proving the existence of an implied partnership or joint venture, she did not meet the burden of proving that she ever intended to have any interest in the property of Roy Thornton and Theo Thornton, that she did not meet the burden of proving a meretricious relationship that would bestow upon her any interest in the property of Roy and Theo Thornton, that she at no time ever intended to have any interest in the property of Roy and Theo Thornton, and the Court finds that she was an employee only and that she has been compensated for her services rendered to Roy Thornton in many respects."