[No. 8612-0-I.   Division One.   March 31, 1981.]

DARLENE KINTZ, *Respondent,* v. MICHAEL READ, *Appellant.*

*Keller, Rohrback, Waldo & Hiscock* and *John H. Bright,* for appellant.

*Ted R. Willhite* and *Donald J. Horowitz,* for respondent.

JAMES, C.J.—Darlene Kintz, a party to a nonmarital, "living together" relationship,[1] sued Michael Read, the other party in the relationship, for compensation for her services in managing a retail business owned by Read. The trial judge awarded Kintz judgment in the sum of $6,407.69 plus costs. We affirm.

Read and Kintz began living together in Read's home in November 1976. Read, a real estate broker, owned several rental properties and had previously rented one of his houses to Kintz. Kintz was then earning $900 per month as a secretary and was supporting three children.

Shortly after they began living together, Read noticed a newspaper advertisement for the sale of two plant stores. Knowing that Kintz had a talent for growing plants and was dissatisfied with her current job, Read suggested she

---

[1]The United States Census Bureau has invented the word "posslq" to designate a "person of opposite sex sharing living quarters." We have not been similarly inspired but will, nevertheless, decline to use the inappropriate term "meretricious" to describe the relationship between the parties.

consider buying the business. Kintz contacted the proprietor but found that purchasing the business involved greater financial burdens than she could assume. Read then agreed to purchase the business with his funds.

Read owned 100 percent of the business and for income tax purposes deducted all losses on his tax returns. Read's name appeared as the sole owner of the business on the documents of purchase and all subsequent licenses, tax payments, and other documents. Read paid the bills and kept control over the business checking account. Kintz had responsibility for day–to–day management of the shops, purchase of inventory, and hiring of employees. Kintz worked 40 to 70 hours a week. From the time of acquisition in January 1977 until Kintz and Read terminated their relationship in October 1977, the business consistently lost money.

At trial, Read and Kintz disputed the nature of the arrangement under which the plant store business was acquired and operated. Kintz contended she was employed by Read at a salary of $900 a month, plus 50 percent of profits. Read contended they were partners and that there was no agreement to pay Kintz a salary.

The trial judge found

> [t]here was no meeting of the minds of the parties sufficient to establish a partnership or an express contract between the parties . . . relative to said business, its operation, sharing of profits and losses, interest of the parties upon acquisition, sale or dissolution, . . .

except for an understanding that Kintz could buy out Read's "'share of the business'" which was "so vague and indefinite" as to preclude specific enforcement. Finding of fact No. 2. The trial judge also found "plaintiff's services were of value to the business and to the defendant"; that "[i]t is and was reasonable for the defendant to have understood that the plaintiff expected compensation for such services"; that she "made requests for payment from time to time"; and "[t]he reasonable value of plaintiff's services to defendant and the business . . . was $850.00 per

month." Findings of fact Nos. 3, 4. Kintz was awarded judgment for the reasonable value of her services for 9 months, offset by Read's claims for rent and a utility bill owing from Kintz' prior tenancy of his rental house and for inventory Kintz took from the store after their relationship ended.

Read contends that the trial judge erred in failing to find an implied partnership and instead finding an implied contract to compensate Kintz for her services on a quantum meruit basis.

■■ The burden of proving a partnership is upon the party asserting its existence, and the evidence must be stronger as between the parties than when third parties allege its existence. *Eder v. Reddick,* 46 Wn.2d 41, 278 P.2d 361 (1955). Whether evidenced by an express agreement between the parties or implied from the surrounding circumstances, "[t]he existence of a partnership depends upon the intention of the parties." *In re Estate of Thornton,* 81 Wn.2d 72, 79, 499 P.2d 864 (1972), quoting *Nicholson v. Kilbury,* 83 Wash. 196, 202, 145 P. 189 (1915); *accord, Omer v. Omer,* 11 Wn. App. 386, 523 P.2d 957 (1974). The trial judge found that

> there was not a meeting of the minds of the parties, that their discussions were loose and indefinite, that they had different goals, understandings and interests, and that their conduct . . . is inconsistent with partnership or partnership principles.

Finding of fact No. 2. This finding is supported by substantial evidence. That the parties lived together is not sufficient to establish that their business was operated as a partnership. *Omer v. Omer, supra; see In re Estate of Thornton,* 14 Wn. App. 397, 541 P.2d 1243 (1975).

■ It was Kintz' burden to establish her right to recover on an implied contract to pay compensation for her services.

> An implied contract [to pay for services rendered] is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by

implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them.

*Johnson v. Nasi,* 50 Wn.2d 87, 91, 309 P.2d 380 (1957); *Richards v. Pacific Nat'l Bank,* 10 Wn. App. 542, 544, 519 P.2d 272 (1974). Although a mutual intention to contract is required, *Johnson v. Nasi, supra; McKevitt v. Golden Age Breweries, Inc.,* 14 Wn.2d 50, 126 P.2d 1077 (1942), this intention may be deduced from the circumstances:

[T]he law will not imply a promise to pay for services contrary to the intention of the parties, as where it is obvious that there was no intent on the part of either party that payment should be made, *although, if the recipient of services should, as a reasonable man, have understood that the performer expected compensation, the actual belief of the recipient as to such matter is immaterial,* . . .

*Western Asphalt Co. v. Valle,* 25 Wn.2d 428, 438, 171 P.2d 159 (1946); *Jacobs v. Brock,* 66 Wn.2d 878, 406 P.2d 17 (1965).

"Quantum meruit" as an amount of recovery simply means "'as much as deserved'", *Lester N. Johnson Co. v. Spokane,* 22 Wn. App. 265, 274, 588 P.2d 1214 (1978), and measures the recovery under an implied contract to pay compensation as the reasonable value of services rendered. *Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950).

In *In re Estate of Thornton,* 81 Wn.2d 72, 499 P.2d 864 (1972), our Supreme Court recognized implied partnership as a theory upon which a party to a nonmarital relationship could claim an interest in property ostensibly belonging to the other party's estate. An implied partnership is based upon contract principles, *In re Estate of Thornton,* 81 Wn.2d at 79, citing *Nicholson v. Kilbury, supra; Eder v. Reddick, supra.* We perceive no reason for allowing recovery on an implied contract of partnership yet denying

recovery on an implied contract to pay compensation for services.

■ To recover on an implied contract to pay compensation for services, "[t]he services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them." *Johnson v. Nasi, supra* at 91. The existence of such circumstances where the parties are involved in a nonmarital relationship is a fact question to be resolved in light of all factors probative of the parties' understanding and expectations. These factors include: the parties' expressed expectations, evidence of requests for compensation, the claimant's employment history, evidence of financial obligations or other need for compensation, the type of services performed, whether the claimant had some equity interest in a business or other place where services were provided, the duration of the services, and the nature of the parties' relationship while services were performed.

■ The trial judge believed Kintz' testimony that she expected to be paid and requested payment. Judging the weight and credibility of testimony is a matter within the sound discretion of the trial judge. *Ladley v. Saint Paul Fire & Marine Ins. Co.,* 73 Wn.2d 928, 442 P.2d 983 (1968); *In re Marriage of Mahalingam,* 21 Wn. App. 228, 584 P.2d 971 (1978). The circumstances of this case, considered in light of the factors discussed above, strongly corroborate Kintz' testimony. We conclude that there is substantial evidence to support the trial judge's finding that Kintz rendered services under circumstances where, notwithstanding a generally close and affectionate relationship, Read knew, or should have known, compensation was expected.

The judgment is affirmed.

WILLIAMS and ANDERSEN, JJ., concur.